JESSIE *v.* CHATTANOOGA GOLF AND COUNTRY CLUB *et al.*

(*Knoxville*, September Term, 1938.)

Opinion filed November 25, 1938.

JACOB M. ALPER and JEROME M. ALPER, both of Chattanooga, for plaintiff in error.

LYNCH, PHILLIPS, HALL & ALLISON, of Chattanooga, for defendants in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

From a judgment dismissing his suit on demurrer, the plaintiff has appealed.

This action was brought against the Chattanooga Golf and Country Club, an unincorporated association, and certain of its members and officers to recover damages for injuries sustained by the plaintiff while doing work on the defendants' premises.

The facts of plaintiff's case are stated in his declaration as follows:

"That on or about the 11th day of February 1938 the plaintiff was employed by the defendants to paint the tower gravity tank, which is a part of the fire sprinkler system of the Chattanooga Golf & Country Club and is located on the premises of that club. The tank sets approximately one hundred feet above the ground, supported on four steel uprights, and the sides of the tank

which were to be painted are some twenty feet high. On the roof of the tank, which slants at about a thirty degree angle, there is a steel ladder which lays flat and extends from the top and center of the roof to within a few inches of its edge. The bottom of the ladder is equipped with small rollers so that the ladder can be revolved around the roof and placed so as to make all parts of the roof and all parts of the sides of the tank accessible to painters and other workmen. At the top and center of the roof a saucer-shaped steel disk is secured to the roof of the tank by four bolts, and the top of the ladder is permanently attached to this steel base.

"In order to do the work for which he was employed it was necessary for the plaintiff to pull himself up the side of the tank by means of a scaffold as the tank was too high for him to paint without such aid. The plaintiff worked his scaffold by tying a steel cable to one of the rungs of the ladder and forming a loop at the other end of the cable and extended the cable over the edge of the roof to the side, and in this loop the plaintiff hooked his pulley and tackle and by this arrangement he was able to pull himself up or down in the customary manner of painters as the work required.

"After the plaintiff had painted for some two hours in this suspended position, the whole top structure of the tank, as above described, gave way and the plaintiff was hurled clear of the balcony around the side of the tank and hurtled through space to the ground from a height of some 115 feet, barely escaping with his life, but suffering the following grave and serious injuries."

Various serious injuries suffered by the plaintiff are then enumerated, and it is averred that he will probably never be able hereafter to follow any gainful employment.

It is charged that the accident resulted from the rusted and rotten condition of that part of the roof of the tank to which the steel plate described in the declaration was attached but that this condition was not open to the view of the plaintiff.

It is averred that the defendants were negligent in the duty of inspection and that they breached their duty to provide plaintiff with a safe place to work and breached their duty in failing to provide him with safe and suitable instrumentalities or appliances with which to work in that the said ladder and steel disk described were insecurely fastened and, finally, that the defendants maintained, in particulars heretofore stated, a private nuisance on their premises in which the plaintiff was invited to work.

The trial judge was of opinion, as we understand, that the declaration did not state a cause of action and we must concur in this conclusion.

The exact relation between the plaintiff and the defendants here is not detailed. The declaration, however, fails to show that the plaintiff was employed for any other purpose than to paint this tank and there is no showing that the defendants undertook in any way to supervise the manner in which this job should be executed, or to provide any instrumentality or appliances to be used in the work.

It is not charged that the defendants undertook to provide means by which the plaintiff could get up to the tank nor to provide means by which he could move around and paint the sides of the tank. The scaffold and the ropes used seemed to have been plaintiff's own and to have been arranged according to his own plan. There was no suggestion by the defendants that the plaintiff

should attach his scaffold to this ladder. That was his own idea.

The case does not seem to us different from the ordinary scaffold case in which the master leaves to his servant the matter of the construction of a scaffold upon which the latter is to work. Unless in such a case the master furnishes defective materials, he is not liable for an injury sustained by the servant and due to faulty construction of the scaffold. *Griffin & Son* v. *Parker,* 129 Tenn., 446, 164 S. W., 1142, L. R. A., 1917F, 497. For a stronger reason, the master is not liable to a servant, under such circumstances, when the servant constructs his own scaffold of his own materials.

Liability of the defendants for plaintiff's injuries must be denied for another familiar reason. This ladder was designed for those working on the roof of the tank, which it is said sloped at an angle of about thirty degrees. The weight of the workmen standing on this ladder would be down and in and the roof would largely support that weight. Plaintiff's weight, however, as well as the weight of his scaffold, brought about a sheer pull on the ladder away from the roof. The rope being attached to a rung of the ladder and the end supporting plaintiff and the scaffold being flung over the eaves, the pull would be down and out. The top fastening of this ladder may have been entirely sufficient to hold it in place when the pressure was down and in, but altogether inadequate to withstand a pull down and out. Such a ladder was not designed for the use to which it was put by the plaintiff.

The law is well settled that a master is only required to use ordinary care to see that the instrumentalities provided by him for the use of his servants are safe for that use for which they are intended to be put.

"A general principle which is frequently conclusive against a servant's right to maintain an action is that the master's duty in respect to his instrumentalities is restricted to seeing that they are reasonably safe for the performance of the functions which they were designed for." Labatt's Master and Servant, 2d Edition, section 921.

"Where the place of work, machinery or appliance is reasonably safe for the purposes for which it is intended, a servant cannot hold his master liable for injuries resulting from its inappropriate, unauthorized, unnecessary, careless, improper or unusual use or test." 39 C. J., 441.

These principles seem decisive of this case and consideration of other points made by the demurrer is not required. The judgment below must be affirmed.